This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **No. 33,461**

**GILBERT ABEYTA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

**{1}** Defendant Gilbert Abeyta was charged with five counts of criminal sexual contact of a minor (CSCM), contrary to NMSA 1978, Section 30-9-13(B)(1) (2003), arising out of allegations that he had engaged in acts of unlawful sexual contact with two female victims under the age of thirteen. Count 1 of the indictment, pertaining to Victim 1, was severed from Counts 2-5, pertaining to Victim 2, and the severed charges were tried separately. A jury found Defendant guilty of CSCM related to Victim 1 as charged in Count 1. In a later trial, Defendant was found not guilty of CSCM related to Victim 2.

**{2}** In the present case, Defendant seeks reversal of his conviction of CSCM related to Victim 1. He argues that the district court erred by excluding evidence that Victim 1's mother (Mother), with whom Victim 1 lived, was living with a registered sex offender (Arthur Aragon), that the district court erred in failing to enforce discovery obligations or to grant the defense a continuance in order to further prepare for trial, and that he was denied effective assistance of counsel.

**{3}** We hold that the district court erred in excluding evidence that Mother's boyfriend, who had access to Victim 1, was a registered sex offender. Because the district court's ruling in that regard led Defendant to forego his preferred defense, we reverse Defendant's conviction and remand for a new trial.

**BACKGROUND**

**{4}** Defendant and Mother were married for approximately nine years, and they had three children together. After they were divorced, Mother retained custody of their children, and Defendant was permitted to have overnight visitation with Victim 1 one time per week. After approximately one month, the visitation arrangement ended because Victim 1 alleged that, during one of the overnight visits, Defendant touched her vagina, under her underwear, with his hand. As a result of the allegation, Defendant was charged with one count of CSCM. That charge was Count 1 in a five-count indictment; the remaining counts pertained to allegations made by Victim 2 that Defendant had unlawfully touched her buttocks and forced her to touch his penis.

**{5}** Over the course of the proceedings in this matter, Defendant was represented by three separate attorneys. Through his second attorney, Defendant successfully moved to sever Count 1 from the remaining charges. Defendant's second attorney also conducted a pretrial interview of Mother.

**{6}** Defendant's third attorney (hereafter Defendant's counsel or counsel) sought to interview the State's witnesses, including Mother. The State did not provide Defendant's counsel with contact information for its witnesses, and counsel could only access the witnesses through the district attorney's office. Nevertheless, the State made its witnesses available, excluding Mother.

**{7}** At a docket call approximately one month prior to trial, counsel informed the district court that she needed more time to prepare for trial, and she was not ready to proceed to trial on the designated date. Among the reasons that counsel gave for not being ready for trial was that she had not been able to interview Mother. The court indicated that the trial nevertheless would proceed as scheduled.

**{8}** The State informed counsel that to interview Mother, counsel would have to file a motion in the district court. Counsel instead subpoenaed Mother, and the State moved to quash the subpoena. A hearing on that motion was held approximately a week before trial was to start. Counsel argued that the second attorney's interview with Mother was inadequate because, among other reasons, counsel's strategy and theory of the case was different from that of the second attorney. The court granted the motion to quash the subpoena but ordered the State to allow counsel to interview Mother, provided that the interview questions pertained to matters that were not earlier addressed in the second attorney's interview. Because counsel was unavailable during the week preceding trial to interview Mother, the interview did not take place before the day trial started.

**{9}** On the morning of trial, the district court heard arguments on a motion in limine that had been filed by the State. Among the issues raised in that motion was the State's request that the district court order the defense to refrain from questioning its

4

witnesses about "the criminal history of Arthur Rory Aragon." After Mother and Defendant were divorced, Mr. Aragon became Mother's boyfriend and later her husband. Mr. Aragon and Mother were dating when both Victims made the allegations that led to the charges against Defendant. Mr. Aragon was a registered sex offender.

{10}     Counsel argued that in order to pursue an "alternate suspect theory" as a defense, Defendant should be permitted to raise the issue of Mr. Aragon's status as a registered sex offender through cross-examination of Mother. The State argued that permitting Defendant to introduce Mr. Aragon's status as a sex offender at trial would be "overly prejudicial," reasoning that "all of a sudden it's automatically somebody else, just because of the title[] 'registered sex offender.' And he's not here to defend himself. He's not here to say what his charges were that he became a registered sex offender[.]" The following exchange then occurred, concluding in the court's ruling that Mr. Aragon's status as a sex offender would not be admitted at trial.

> [Prosecutor]: Neither of the [Victims] ever, ever say that [Mr. Aragon] is the one that did this. They have always only said that [Defendant] is the one that did this.

> [Court]: I understand that. If he had access as well—what's his prior criminal—I mean, he's a registered sex offender because of child molestation charges?

> [Prosecutor]: Yeah. I believe it—I think it was—if you'll give me just a second.

> [Court]: Do you know what it is, [counsel]?

[Counsel]: It is child molestation.

[Court]: How long ago?

[Prosecutor]: I think it's a CSC, but it's out of state.

. . . .

[Court]: I think it's fertile ground for [the defense] to be able to address. . . . If [Mother] . . . has knowledge that he was a convicted sex offender and that she knew it and that he had some contact with the kids, I think that's fertile ground to get into, over the State's objection. It's just going to depend on how that's laid out in the testimony.

[Prosecutor]: And I'd just like to clarify for the record . . . his conviction date was 1994. . . . [a]nd the offense only says 'Criminal Sexual Penetration, First Degree.' It doesn't indicate whether it was a child or not. And he has been registering since 1997.

And . . . the concern the State has is that they're going to turn this in—to look like this individual, who isn't charged in this case, is doing things to these kids when that's never been the allegation. . . .

. . . .

[Court]: . . . If there's no representation or information at all that it was a child involved in the underlying allegation, don't go there.

[Counsel]: Well, Your Honor, I can tell you that regardless of what the actual facts of that [are], [Mother and Victim 2] both understood it to involve a child.

[Court]: Well, without you having more, without having him here, without having a conviction that is more specific, don't go there. Don't go there. I think that's misleading. I'm not going to allow it. That's the [c]ourt's order.

{11} Defendant was tried, and the fact that Mother had been dating a registered sex offender when the allegations of abuse against Defendant were made was not raised at trial. Instead of an alternate suspect theory, the defense pursued a theory that Defendant had not committed the alleged act of CSCM, but that if he did touch Victim 1's vagina, it was not intentional and not unlawful. The jury found Defendant guilty of CSCM of Victim 1.

{12} Following his conviction of CSCM of Victim 1, Defendant was tried and acquitted of the crimes arising out of Victim 2's allegations of CSCM. At the second trial, resulting in acquittal, information pertaining to Mr. Aragon's status as a registered sex offender, who lived with Mother, was presented to the jury. Approximately one month after the second trial, Defendant filed a motion for a new trial pertaining to the charge of CSCM against Victim 1.

{13} As grounds for a new trial, counsel argued that prohibiting Defendant from raising the issue at trial of Mr. Aragon's status as a registered sex offender, who had access to Victim 1, impinged Defendant's due process right to present a defense. The issue was exacerbated, counsel argued, by the fact that counsel was unable to interview Mother prior to the trial. Following Defendant's conviction of CSCM of Victim 1, in preparing for Defendant's trial related to Victim 2's allegations, counsel had interviewed Mother and as a result of that interview, counsel had learned that Mr.

Aragon's conviction was for the crime of criminal sexual penetration of a child under the age of thirteen in Bernalillo County. Counsel characterized this as "newly discovered evidence" concerning Mr. Aragon and argued that it showed that the State's representation at the hearing on its motion in limine, that the nature of Mr. Aragon's sex offense was unknown, was not accurate.

{14}     In response to Defendant's motion for a new trial, the State argued, in part, that specific information pertaining to Mr. Aragon's conviction for criminal sexual penetration of a minor was included within 245 pages of records from the Children, Youth, and Families Department that had been provided to the defense prior to trial. As such, the State argued the evidence was not "newly discovered" because it could have been discovered had defense counsel exercised due diligence. The State argued further that had defense counsel exercised due diligence and discovered the information it would have been permitted to present the information and to pursue an "alternate suspect theory" at trial because the district court's ruling at the motion in limine hearing was that the information could be presented if Defendant had specific information regarding the conviction. The district court denied Defendant's motion for a new trial.

{15}     On appeal from his conviction of CSCM of Victim 1, Defendant argues that the district court erred and infringed upon his right to present a defense by excluding

evidence that Mother was living with a registered sex offender, who had access to Victim 1, when the allegation of CSCM was made. He argues further that the district court erred by denying counsel additional time to prepare for trial and by quashing the subpoena by which counsel sought to interview Mother and that these factors also infringed upon his right to present a defense by effectively depriving him of access to Mother and denying him adequate time to prepare for trial. Finally, Defendant argues that he was denied effective assistance of counsel.

**{16}** We conclude that the district court was misled by the prosecutor's misrepresentation regarding Mr. Aragon's sex offense and that, as a result of the misrepresentation, the district court erroneously excluded evidence that Mr. Aragon was a registered sex offender who had access to Victim 1. Since the court's evidentiary ruling caused Defendant to forego his alternate suspect defense, due process warrants reversal of his conviction and remand for a new trial. Because we reverse on the foregoing ground, we do not consider Defendant's remaining arguments.

**DISCUSSION**

**The Evidentiary Issue**

**{17}** The appellate courts review the district court's evidentiary rulings for an abuse of discretion. *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829. "An

abuse of discretion occurs when the [district court's] ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Guerra*, 2012-NMSC-027, ¶ 18, 284 P.3d 1076 (internal quotation marks and citation omitted).

{18} "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action." Rule 11-401 NMRA. Relevant evidence is admissible unless it is prohibited by the United States or New Mexico Constitutions, a statute, or the Rules of Evidence or other rules prescribed by the Supreme Court. Rule 11-402 NMRA. Relevant evidence may be excluded by the district court if the probative value of the evidence "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury[.]" Rule 11-403 NMRA.

{19} In granting the State's motion in limine to exclude evidence pertaining to Mr. Aragon's status as a registered sex offender unless Defendant could provide "specific information" that the sex offense was perpetrated against a child, the district court reasoned that without such specific information the evidence would be "misleading." From the court's ruling, viewed in context, we conclude that the court's reasoning was that, without proof that Mr. Aragon had perpetrated a sex crime upon a child, the probative value of evidence that he was a registered sex offender was outweighed by the danger of misleading the jury. *See* Rule 11-403.

{20} Defendant argues that the court's evidentiary ruling violated his fundamental right to present a defense that was premised on a theory that Mr. Aragon, a registered sex offender who had access to Victim 1 during the relevant time frame, not Defendant, perpetrated CSCM against Victim 1. The State argues that evidence of Mr. Aragon's status as a registered sex offender was inadmissible under Rule 11-403. The State also argues, for the first time on appeal, that evidence of Mr. Aragon's status as a registered sex offender was inadmissible under Rule 11-404(B) NMRA. *See id.* (governing the admissibility of character evidence and evidence of other crimes, wrongs, or acts).

{21} Since the district court's ruling was premised on Rule 11-403, we begin by considering whether, pursuant to that rule, the court erred in excluding evidence of Mr. Aragon's status as a sex offender. Because the record reflects that the district court was inclined to permit the evidence and changed its ruling only after the prosecutor specifically represented that there was no indication that Mr. Aragon's crime involved a child, in contradiction of Defendant's counsel's assertions that it had, we conclude that but for the prosecutor's misrepresentation, the district court would have admitted the evidence. We also conclude that the evidence was admissible pursuant to Rule 11-403.

{22} As set forth earlier in this Opinion, counsel argued that Mr. Aragon's status as a sex offender stemmed from an act of child molestation, that Mr. Aragon had contact with Victim 1 during the time frame in which Victim 1 alleged that Defendant had touched her vagina, and that those facts were admissible to support an alternate suspect theory. The district court agreed with counsel stating, "I think it's fertile ground for [the defense] to be able to address. . . . If [Mother] . . . has knowledge that he was a convicted sex offender and that she knew it and that he had some contact with the kids, I think that's fertile ground to get into, over the State's objection." The district court's comment, viewed through the framework of Rule 11-403, reflects the court's view that if Mr. Aragon was a registered sex offender who had perpetrated a sex crime upon a child, such evidence was probative of Defendant's guilt or innocence and that its probative value outweighed its potential to confuse or mislead the jury or to cause undue prejudice to the State. *See id.* (stating that relevant evidence is admissible provided that its probative value outweighs its potential to cause unfair prejudice or confusion of the issues or to mislead the jury). The district court's reasoning was sound. *See State v. Rosales*, 2004-NMSC-022, ¶¶ 12-14, 136 N.M. 25, 94 P.3d 768 (stating that, in a murder case, evidence of a third person's motive to commit the crime was "highly probative on the issue of [the d]efendant's guilt or innocence" and that the evidence would have been helpful instead of confusing and

12

would have been admissible under Rule 11-403); *see also Case v. Hatch*, 2008-NMSC-024, ¶ 55, 144 N.M. 20, 183 P.3d 905 (stating that "[a] defendant is entitled to defend against criminal charges by showing that a third person, and not the defendant, committed the crime charged" and that evidence that the other person was the perpetrator is admissible provided that there is "direct or circumstantial evidence linking the third person to the crime").

{23} After the district court indicated its inclination to admit evidence of Mr. Aragon's status as a sex offender, the prosecutor expressed that she wanted to "clarify for the record" that the information that the State had about Mr. Aragon's conviction for a sex offense did not indicate whether the offense was committed against a child. Although Defendant's counsel argued that both Mother and Victim 2 understood Mr. Aragon's sex offense to have involved a child, in light of the prosecutor's misrepresentation, the district court required further proof of the "specific" nature of the crime. As a result of the court's ruling, counsel forewent the alternate suspect theory.

{24} The State later revealed, in response to Defendant's motion for a new trial, that it had provided specific information about the nature of Mr. Aragon's sex offense conviction during discovery approximately two months before trial. While the State faulted Defendant's counsel for failing to exercise "due diligence" and thereby learn

13

the specific nature of Mr. Aragon's conviction, that argument does not reflect well on the State because its specific misrepresentation precluded the use of an alternative suspect defense. Access to the State's witnesses, including Mother was within the exclusive control of the State. Not only did the State not facilitate an interview of Mother by counsel, the State set up roadblocks to the interview by requiring counsel to seek a court order to conduct the interview and later by successfully moving to quash counsel's subpoena to interview Mother. The record reflects that counsel first learned the specific nature of Mr. Aragon's conviction as a result of her interview with Mother prior to Defendant's trial pertaining to Victim 2's allegations. It is reasonable to infer that had counsel been given the opportunity to interview Mother prior to Defendant's trial in this matter, she would have learned the specific nature of Mr. Aragon's conviction and, accordingly, would have been allowed to pursue the alternate suspect theory of defense.

{25}    Furthermore, the fact that specific information regarding Mr. Aragon's conviction was contained in the 245 pages of documents provided to counsel by the State did not come to light until the State responded to Defendant's motion for a new trial. The State prevailed in its motion to exclude any mention of Mr. Aragon's sex offense conviction by arguing that the specifics were unknown. Thus, not as a result of the defense's lack of diligence but on the State's apparent failure to diligently

14

peruse its own internal discovery documentation in which Mr. Aragon's conviction was described, the State prevailed in its motion as a result of the prosecutor's misrepresentation that misled the district court.

{26}    Had the prosecution accurately represented the nature of Mr. Aragon's conviction, every indication is that the district court would have admitted the evidence thereby allowing Defendant to pursue his alternate suspect theory. Basic notions of fairness prevent the State from prevailing in its argument that the victory it gained as a result of the prosecutor's misrepresentation that misled the district court should stand because Defendant's counsel, who presented accurate information regarding Mr. Aragon's conviction, could not do so with enough specificity to overcome the prosecutor's misrepresentation.

{27}    We conclude that the prosecution's misrepresentation misled the district court in making an evidentiary ruling that was "clearly against the logic and effect of the facts and circumstances of the case." *Guerra*, 2012-NMSC-027, ¶ 18 (internal quotation marks and citation omitted) (stating the abuse of discretion standard). As a result, Defendant forewent his alternate suspect theory of defense. "A defendant seeking relief because an avenue for his defense was foreclosed by an evidentiary ruling must show that he was prejudiced by the ruling. However, no more prejudice need be shown than that the trial court's order may have made a potential avenue of

15

defense unavailable to the defendant." *State v. Campbell*, 2007-NMCA-051, ¶ 14, 141 N.M. 543, 157 P.3d 722 (alteration, internal quotation marks, and citations omitted). Under these circumstances, due process warrants reversal of Defendant's conviction and remand for a new trial. *See id.* ¶¶ 17-18, 23 (reversing the defendant's conviction and remanding for a new trial on the ground that the defendant's due process right to present a defense was violated as a result of the district court's erroneous evidentiary ruling). Having concluded that, under the circumstances of this case, reversal and remand for a new trial is appropriate for the reasons discussed in this Opinion, we need not and do not address Defendant's remaining arguments.

**{28}** Furthermore, we decline to address the State's argument that evidence of Mr. Aragon's status as a sex offender was inadmissible under Rule 11-404(B). The district court did not consider whether Rule 11-404(B) would prohibit the admission of evidence pertaining to Mr. Aragon's status as a sex offender, which was raised by the State for the first time on appeal. While this Court may affirm a district court's ruling on the ground that it was right for any reason, we will not affirm on grounds not considered by the district court where it would be unfair to the appellant to do so. *State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828. Defendant did not have an opportunity in the district court to articulate a theory of admissibility of evidence pertaining to Mr. Aragon's sex offender status under Rule 11-404, and it

would therefore be unfair to Defendant to assume what his argument may have been and decide whether the assumed argument would comport with the rule.

**CONCLUSION**

{29}	We reverse Defendant's conviction and remand for a new trial.

{30}	**IT IS SO ORDERED.**


_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**


_____
**MICHAEL D. BUSTAMANTE, Judge**


_____
**TIMOTHY L. GARCIA, Judge**